**FILED**
**Dec 19, 2019**
**02:29 PM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Natacha Hudgins,<br>　　　Employee,<br>v.<br>Global Personnel Solutions, Inc.,<br>　　　Employer,<br>And<br>American Zurich Insurance Co.,<br>　　　Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2017-01-0690<br><br>State File No.: 92112-2016<br><br>Judge Thomas Wyatt |

## EXPEDITED HEARING ORDER GRANTING TEMPORARY DISABILITY AND MEDICAL BENEFITS

The Court held an Expedited Hearing on December 17, 2019. The issues were whether Natacha Hudgins's lumbar condition arose primarily out of and in the course and scope of employment and, if so, whether she established entitlement to temporary disability and medical benefits. For the reasons below, the Court awards Ms. Hudgins temporary disability and medical benefits.

### History of Claim

Before her injury, Ms. Hudgins worked for fifteen years through Global Personnel Solutions as a material handler for a plant that manufactured batteries. Her job required walking throughout the plant, including up and down stairs, and standing for long periods of time. She had no physical conditions that restricted her from working at Global.

On November 23, 2016, Ms. Hudgins fell, striking her right hand and right knee. She immediately reported her injury, and Global authorized medical care. She continued to work every day following the fall, despite developing a limp because of right-knee pain.

Ms. Hudgins eventually came under the care of orthopedist Dr. Carl Dyer, whom she selected from a panel. After a period of conservative treatment, Dr. Dyer referred

1

Ms. Hudgins to Dr. Martin Redish, who recommended total replacement of her right knee. Global authorized only a partial knee replacement after utilization review; Dr. Redish performed that surgery on October 11, 2017.

Ms. Hudgins testified that she began to experience back and hip pain, along with swelling and numbness in her legs and feet, when she began undergoing therapy following surgery. Two weeks after surgery, Dr. Dyer noted that Ms. Hudgins was using a walker and "has had a flare-up of bursitis in the right hip subsequent to surgery." Over the next few monthly visits, Dr. Dyer noted the persistence of complaints of hip pain and, on exam, observed atrophy of Ms. Hudgins's right quadriceps muscle. By February 2018, Dr. Dyer diagnosed Ms. Hudgins with a flexion contracture in her right knee and noted her primary complaint of right-hip pain that "she states . . . came on as a result of her having to walk with an alternative gait."

Dr. Redish continued seeing Ms. Hudgins for follow-up of her knee surgery. He did not suggest additional knee surgery and placed her at maximum medical improvement from the standpoint of her knee surgery in October 2018. Ms. Hudgins continued under Dr. Dyer's care after Dr. Redish released her.

On September 13, 2018, Dr. Dyer noted Ms. Hudgins had made minimal progress, "does not walk step over step,"[1] and complained of stiffness in her knee and back pain radiating into the hip and, at times, down her right leg. Lumbar x-rays revealed "marked narrowing of the L4-L5 interspace with almost complete obliteration of the interspace." A later MRI showed osteophyte formation at the L4-L5 level with potential compression of the L4 nerve root. On September 27, Dr. Dyer noted, "I feel like this (Ms. Hudgins's back, hip and leg symptoms) is at the very least an aggravation of a preexisting problem secondary to walking with [a] flexion contracture of the right knee."

Dr. Dyer eventually referred Ms. Hudgins to Dr. Adam Caputo for a surgical assessment of her lumbar condition. Dr. Caputo encouraged continued conservative care but also recommended either fusion or decompression surgery at the L4-L5 level, depending on whether the L4-L5 interspace is too badly collapsed to support a fusion. Global authorized the decompression surgery but not the fusion following utilization review.

Ms. Hudgins filed a Petition for Benefit Determination seeking authorization of the fusion surgery. Global challenged the necessity of the fusion surgery and the work-relatedness of Ms. Hudgins's spinal condition. Global continued to deny authorization even after utilization review later certified the full surgery that Dr. Caputo recommended.

---

[1] Dr. Redish also noted Ms. Hudgins's difficulty ambulating in his post-surgery examinations. Following his last visit with her on May 3, 2018, Dr. Redish described Ms. Hudgins's gait as "walking stiff legged with a cane even though she is able to flex her knee nicely."

Ms. Hudgins requested this Expedited Hearing seeking authorization of the full surgery and payment of temporary disability benefits. During the hearing, Ms. Hudgins testified that she has been disabled from working since her knee surgery. She informed Global when Dr. Redish released her from his care, but Global did not offer her a position because it required a full release, which she did not have. Ms. Hudgins testified that she has not sought work elsewhere because of her spine-related symptoms.

Dr. Dyer has kept Ms. Hudgins under restrictions since at least the middle part of 2018. On December 11, 2018, he modified her restrictions to no repetitive lifting, bending, stooping, pulling, and tugging. While Dr. Dyer's next two notes did not specifically discuss restrictions, he wrote in a September 10, 2019 note that her "[w]ork restrictions are the same." Global paid Ms. Hudgins temporary partial disability benefits[2] until April 2019, when it ceased benefits, apparently because Dr. Redish had earlier placed her at maximum medical improvement from the right-knee surgery.[3]

On the issue of the work-relatedness of Ms. Hudgins's spinal condition, both parties submitted causation letters to Dr. Dyer. Dr. Dyer responded to Ms. Hudgins's letter in May 2019 by confirming that he treated both her right-knee injury and the degenerative conditions in her lumbar spine and indicating that "*these conditions* arise primarily out of and in the course and scope of employment." (Emphasis added.) He also stated that it was "unknown" when Ms. Hudgins would attain maximum medical improvement from her injuries.

In August 2019, Global asked Dr. Dyer by letter: "Does it seem more likely than not that her symptoms to her back are the result of her modifying the way that she walks because of her knee injury?" Dr. Dyer responded, "[p]ossibly—the patient also has Deg. Disk Disease. See med record."[4] Global asked Dr. Caputo to address causation, but he declined.

Global argued that it does not owe any of the benefits Ms. Hudgins seeks because her lumbar and hip conditions are not work-related. Global contended that Dr. Dyer's causation opinion is insufficient to establish that Ms. Hudgins's lumbar and hip injuries arose primarily out of and in the course and scope of employment. It also argued that Ms. Hudgins cannot recover benefits for her hip and back injuries because she did not injure those parts of the body in her fall at work. Finally, Global asserted that even if Ms. Hudgins establishes causation, she did not prove entitlement to temporary disability benefits because Dr. Redish placed her at maximum medical improvement in October 2018.

---

[2] The Wage Statement documents an average weekly wage of $389.86 and a compensation rate of $259.91. The parties agreed that these calculations are correct.
[3] Ms. Hudgins argued that Global "pulled the plug" on all her benefits once it learned Dr. Caputo recommended surgery.
[4]The only causation discussion in Dr. Dyer's records is his September 13, 2018 office note.

## Findings of Fact and Conclusions of Law

### General Legal Principles

Ms. Hudgins must come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). To do this, she must show that her alleged injuries arose primarily out of and in the course and scope of employment. This includes showing "to a reasonable degree of medical certainty that [the work incident] contributed more than fifty percent (50%) in causing . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Injuries that aggravate pre-existing conditions are compensable if the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(14).

### Causation

Here, only Dr. Dyer addressed the causation of Ms. Hudgins's back condition. In his September 13, 2018 records, Dr. Dyer wrote, "I feel like [Ms. Hudgins's back, hip and leg symptoms are] at the very least an aggravation of a preexisting problem secondary to walking with a flexion contracture of the right knee." Dr. Dyer's responses to Ms. Hudgins's causation inquiry confirmed this opinion. However, Global argued that Dr. Dyer's use of the word "possibly" in response to its letter makes his causation responses too equivocal to support an award of benefits. *See* Tenn. Code Ann. § 50-6-102(14) (opinions based on "speculation or possibility" cannot form the basis of an award of benefits).

The Court does not consider that Dr. Dyer's use of the word "possibly" in responding to Global's letter casts his opinion into the realm of speculation. Global's causation question emphasized only one side of the inquiry—whether "her symptoms to her back are the result of her modifying the way that she walks due to her knee injury." Dr. Dyer stated that the modification in Ms. Hudgins's gait "possibly" caused her lumbar symptoms but did so in the context of a reminder that she also had degenerative disk disease. Dr. Dyer then referred back to his medical records for his opinion that the gait change aggravated Ms. Hudgins's degenerative disk disease.

After reviewing Dr. Dyer's responses in context with the entire evidentiary record, the Court holds that Ms. Hudgins established that she will likely prevail at trial in showing that her lumbar and hip conditions arose primarily out of and in the course and scope of employment. The Court finds Dr. Dyer's opinion—that an altered gait resulting

4

from knee surgery aggravated Ms. Hudgins's degenerative disk disease, causing her need for back surgery—persuasive, as it presents the clearest opinion on the cause of Ms. Hudgins's hip and lumbar conditions. Based on that opinion, the Court holds that Ms. Hudgins will likely prevail at trial in establishing that her need for back surgery arose primarily out of and in the course and scope of employment. *See generally Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14-15 (May 15, 2017), ("a physician may render an opinion that meets the legal standard espoused in section 50-6-102(14) without couching the opinion in a rigid recitation of the statutory definition.").

The fact that Ms. Hudgins did not originally hurt her lumbar spine in the fall at work does not preclude the compensability of the lumbar conditions. In *Ogden v. McMinnville Tool and Die, Inc.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 14, at *10-11 (May 7, 2018), the Workers' Compensation Appeals Board held:

> We note the general rule in Tennessee that a "subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 696 (Tenn. 2008). The rule, commonly referred to as the direct and natural consequences rule, has been described as follows: "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." *Id.* at 696-97. Therefore, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991).

In view of the above authority and the evidence here, the Court holds that Ms. Hudgins will likely prevail in proving at trial that her lumbar and hip conditions are the direct and natural consequence of the gait change brought about by her work-related right-knee injury. Consequently, she is entitled to benefits for those conditions, including authorization of the surgery Dr. Caputo recommended, should he still recommend it.

*Temporary Disability Benefits*

The Court next addresses Ms. Hudgins's claim for temporary disability benefits. To recover these benefits, Ms. Hudgins must show she would likely prevail at trial in establishing the following: (1) she suffered a disability from working as the result of a compensable injury; (2) a causal connection exists between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). The Court holds she carried this burden.

5

On December 11, 2018, Dr. Dyer placed various restrictions on Ms. Hudgins's activities and never removed them. His most recent office note, dated September 2019, stated that her restrictions "are the same." Considering this evidence and the above rulings, the Court holds that, at trial, Ms. Hudgins will likely satisfy the first two prongs of the above-stated test.

The Court further holds Ms. Hudgins will likely establish a period of disability beginning on the date Global ceased temporary disability benefits and concluding on the date that Ms. Hudgins either returns to work or reaches maximum medical improvement from her lumbar and hip injuries.

Therefore, Global shall pay Ms. Hudgins accrued temporary partial disability benefits in the amount of $259.91 per week for the period beginning the date Global ceased paying benefits to the date of this order. Global shall continue those payments until Ms. Hudgins either returns to work or is placed at maximum medical improvement for her lumbar injuries.

**IT IS, THEREFORE, ORDERED** as follows:

1. Global shall promptly authorize Ms. Hudgins to return to Dr. Caputo and perform the lumbar surgery, should Dr. Caputo continue to recommend it. Global shall also authorize on-going treatment of Ms. Hudgins's right-knee and hip injuries with Dr. Dyer.

2. Global shall pay temporary partial disability benefits in a lump-sum calculated by determining the number of weeks since the date Global ceased paying temporary benefits and the date of the first payment of temporary benefits under this order. Afterward, Global shall pay temporary benefits weekly or biweekly until Ms. Hudgins either returns to work or is determined at maximum medical improvement from her lumbar and hip injuries. The weekly compensation rate is $259.91.

3. This case is set for a Status Hearing at **3:00 p.m. Eastern Time on March 20, 2020.** The parties shall call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call on the scheduled date/time to participate. Failure to call in might result in a determination of the issues without your participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by**

email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED December 19, 2019.**

_[signature]_

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## Appendix

**Technical Record:**

1. Petition for Benefit Determination filed October 3, 2017
2. Petition for Benefit Determination filed July 24, 2019
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Notice of Expedited Hearing
6. Employer Witness and Exhibit List
7. Employer Pre-Hearing Brief

**Exhibits:**

1. Wage Statement
2. Choice of Physician form
3. First Report of Injury
4. Affidavit of Natacha Hudgins
5. Medical records submitted by Ms. Hudgins
6. Medical records submitted by Global
7. Utilization Review certification

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on December 19, 2019.

| Name | Certified Mail | Email | Service sent to: |
|------|----------------|-------|------------------|
| Matthew Goleman<br>Employee's Attorney | | X | mcoleman@loganthompsonlaw.com<br>lhaywood@loganthompsonlaw.com |
| Tiffany Sherrill<br>Employer's Attorney | | X | tbsherrill@mijs.com<br>clalmeida@mijs.com |

**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation

www.tn.gov/labor-wfd/wcomp.shtml

wc.courtclerk@tn.gov

1-800-332-2667

Docket #: _____

State File #/YR: _____

Employee _____

v.

Employer _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

Judge _____

## Statement of the Issues

Provide a short and plain statement of the Issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

Type of Case [Check the most appropriate item]

☐ Temporary disability benefits

☐ Medical benefits for current injury

☐ Medical benefits under prior order issued by the Court

## List of Parties

Appellant (Requesting Party): _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone:_____Email: _____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                              RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $ _____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

Amount Owed         To Whom

_____    _____

_____    _____

_____    _____

_____    _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                                     RDA 11082